EDMUNDO B. FERNÁNDEZ, demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-63-291    *Resuelto:* 17 de noviembre de 1967

430

*Félix Ochoteco, Jr., y Luis R. Polo,* abogados del recurrente; *J. B. Fernández Badillo, Procurador General, Manuel Tirado Viera y Peter Ortiz, Procuradores Generales Auxiliares,* abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Plantéase en este recurso la naturaleza, para fines de la imposición de la contribución sobre ingresos, de retiros de fondos efectuados periódicamente por el presidente y principal accionista de una corporación con cargo a su cuenta personal. El contribuyente sostiene que deben considerarse como préstamos tomados por él a la entidad; [1] el Secretario de Hacienda, con quien estuvo acorde el tribunal de instancia, que se trata de dividendos informales e implícitos que constituyen ingreso sujeto a tributación en los años en que se recibieron. Como usualmente sucede cuando se trata de una transacción sujeta a distinto tratamiento contributivo, los

---

[1] El Art. 403 de la vigente Ley de Corporaciones, 14 L.P.R.A. sec. 1403, prohibe la concesión de préstamos a los oficiales y directores de corporaciones, salvo en el caso de aquellas que tienen un número limitado de accionistas.

hechos particulares que la rodean son decisivos en la determinación final del asunto. A ellos.

Edmundo B. Fernández Inc. es una corporación íntima de familia cuyo capital social es poseído por el recurrente Edmundo B. Fernández, quien controla alrededor de 60 por ciento de las acciones en circulación, y sus siete hijos, en una participación del remanente. El negocio corporativo consiste en la elaboración del alcoholado SANTA ANA y el ron BARRILITO, actividades a que personalmente se dedicó el señor Fernández por muchos años con anterioridad al 1952 en que tuvo lugar la incorporación. Desde entonces el recurrente es el presidente y principal ejecutivo de la entidad, por cuyos servicios tiene asignado un sueldo anual de $18,000. La corporación siempre ha determinado beneficios anuales en sus operaciones a pesar de lo cual nunca se ha declarado un dividendo en efectivo, acumulándose un sobrante sujeto a distribución que para fines de 1960 ascendía a alrededor de $130,000.

Para enero 1ro. de 1957 la cuenta personal del señor Fernández reflejaba un balance deudor de $40,362.08. Durante los cuatro años siguientes continuó haciendo retiros periódicos y continuos para atender sus obligaciones personales, procediéndose a fin del año económico a acreditarle el sueldo anual mencionado. La siguiente tabla representa un resumen del estado de su cuenta personal:

| Año | Débitos | Créditos | Balance Anual | Balance General |
|---|---|---|---|---|
| 1956 | | | | ($40,362.08) |
| 1957 | $19,160.00 | $18,000 | ($1,160.00) | ($41,522.08) |
| 1958 | $ 9,850.82 | $18,000 | $8,149.18 | ($33,372.90) |
| 1959 | $11,972.30 | $18,000 | $6,027.70 | ($27,165.30) |
| 1960 | $54,596.16 | $18,000 | ($36,596.16) | ($63,761.46) |

Al efectuar los retiros el recurrente no suscribía documento alguno a favor de la corporación; de los cheques expedidos a su nombre generalmente no se desprendía el concepto específico del retiro; no pagó ni se le cargaron intereses; los

abonos se limitaron a la acreditación en los libros del importe de sus sueldos anuales; la corporación acreedora no hizo gestión alguna de cobro durante los años en que esta situación prevaleció. Es procedente observar que no se produjo evidencia, bien mediante copias de las actas o minutas de la corporación o en otra forma, para justificar tan desusual conducta.

1. El factor más importante en la solución del problema que confrontamos es la intención con que se efectuaron los retiros, y más concretamente, si al momento de realizarse se tenía o no la intención de reintegrarlos al haber corporativo. A este respecto se señala en Mertens, *Law of Federal Income Taxation* (ed. 1962), vol. 1, § 9.21, que son circunstancias importantes a considerar (1) tratándose de una corporación íntima o de familia, el grado de control que tiene el accionista; (2) la proporción que guardan los retiros con la participación del accionista en la corporación; (3) si se han suscrito pagarés u otros documentos para evidenciar la deuda; (4) si se han pactado, cargado o pagado intereses; (5) si se han efectuado abonos al principal, (6) si a pesar de haber sobrante disponible no se han declarado dividendos en efectivo. Véanse además, Prentice Hall, *Federal Taxes Income Tax* (1966), § 9062, págs. 9031–9032; Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders*, págs. 166 a 167 (2da. ed.); *Oyster Shell Products Corporation* v. *C.I.R.*, 313 F.2d 449 (1963); *C.I.R.* v. *Makransky*, 321 F.2d 598 (1963); *Gurtman* v. *United States*, 237 F.Supp. 533 (1965); *Robert W. Pashby*, 66,132 P-H Memo TC (1966); *Estate of Robert A. Goodall*, 65,154 P-H Memo TC (1965); *L. D. Lansdale, Jr.*, 65,133 P-H Memo TC (1965); *Vuono-Lione, Inc.*, 65,096 P-H Memo TC (1965); *Curtis Blisinger*, 64,331 P-H Memo TC (1964); *Edwards Motor Transit Co.*, 64,317 P-H Memo TC (1964); *Chesapeake Manufacturing Co., Inc. et al.*, 64,214 P-H Memo TC

(1964); *Bernard Schwartz*, 63,340 P-H Memo TC (1963); Werner, *Stockholder Withdrawals—Loans or Dividends?*, 10 Tax L. Rev. 569 (1955).

■ Aplicando la norma enunciada a los hechos del presente caso forzoso es sostener que no se trata de préstamos a un accionista sino más bien de dividendos implícitos. Como expusimos, el recurrente no pagaba intereses, ni efectuó abonos con excepción de la acreditación de sus sueldos, ni suscribió documentos para evidenciar la deuda. Aunque la corporación gozaba de prosperidad, no se declararon dividendos en efectivo. (2) El hecho de que en algunos años los retiros no excedieron el importe de los sueldos no milita en contra de esta conclusión, pues la prueba revela un patrón de conducta sistemática que se remonta aun a los inicios de la existencia corporativa, que se ha continuado y que en fin de cuentas arroja un balance deudor. Precisamente por tratarse de una corporación de familia no es decisivo el hecho de que los retiros no guardan una proporción sustancial con la participación del contribuyente, cf. *Central Igualdad, Inc.* v. *Srio. Hacienda*, 83 D.P.R. 45, 56 (1961); más impresiona el hecho de que los retiros se hacían a discreción del accionista de mayoría y presidente de la corporación.

2. Consideración separada requiere un retiro de $25,000 efectuado en 21 de enero de 1960 que se destinó a la adquisición de una parcela de 2.50 cds. por compra a don Demetrio Latoni. Ya en 20 de noviembre anterior en la reunión anual de accionistas se había autorizado al recurrente Fernández a que efectuara la transacción a su nombre para luego verificar el correspondiente traspaso a favor de la corporación. Lee el acta: "Antes de dar por terminada la reunión el accionista Edmundo B. Fernández informa que tiene concertada la compra de las propiedades de don Demetrio Latoni

---

(2) En 20 de noviembre de 1959 el sobrante ascendía a $126,198.29. En esa fecha se autorizó un dividendo en acciones hasta la suma de $100,000.

adyacentes a las de esta corporación y que por consideraciones especiales de la transacción, la corporación no puede directamente hacer la compra por lo que pide autorización a la Junta para él comprarlas a su nombre y luego al cabo de algún tiempo traspasarlas a la corporación y a tal efecto pide a la corporación que le autorice a tomar fondos de ésta para tales fines. Considerando las razones expuestas . . . y siendo dicha propiedad necesaria para la expansión de los negocios de la corporación . . . se aprobó . . . autorizar los retiros de fondo [*sic*] de la corporación por el Sr. Fernández con cargo a su cuenta, para los fines antes expresados."

Mediante la escritura Núm. 16 de 21 de enero de 1960 otorgada ante el Notario don José R. Fournier, previa la segregación correspondiente, llevóse a cabo la compraventa, que quedó inscrita en 19 de mayo de 1961. El precio de $26,000 fue satisfecho mediante un cheque por $25,000 expedido a favor de don Demetrio Latoni contra la cuenta corriente de la corporación en el First National City Bank of New York, consignándose como concepto del mismo "Compra casa antigua 'Santa Ana' y predio de 2½ cds. (cargo cta. prtclar. Edm. B. Fernández)", y el remanente de $1,000 lo retuvo el comprador como precio de una parcela de media cuerda vendida por Fernández a Latoni. En 3 de enero del siguiente año el contribuyente segregó una finca de 5.05 cuerdas que incluía las 2.50 cuerdas adquiridas de Latoni, y la traspasó a la corporación por precio de $37,000 que se confesó recibido con anterioridad al otorgamiento, pero que según el testimonio presentado en el acto del juicio se acreditó a la cuenta personal del recurrente.

El tribunal de instancia al analizar la transacción estimó que el largo período de tiempo transcurrido entre la aprobación por la Junta de Planificación en 27 de enero de 1960 de la segregación de las 2.50 cuerdas y el traspaso a la corporación desvirtuaba la explicación ofrecida por el contribuyente—"dificultades con la Junta de Planes"—para adquirir

a su nombre la mencionada parcela.(³) Mas un estudio cuidadoso de la prueba documental obrante en autos no sostiene este criterio del juez a quo. Aparentemente se entendió que la dificultad consistía en lograr la aprobación de la segregación. Omitióse considerar que la aprobación fue condicionada expresamente a que por carecer de acceso a camino público, la parcela segregada de 2.50 cuerdas se agrupara a la finca colindante propiedad particular del recurrente Fernández.(⁴) Resulta claro que a pesar de que la Junta de Planificación había actuado la parcela no podía transferirse directamente a la corporación, en vista de la condición *sine qua non* de agrupación que se ha mencionado. Precisamente, para evadir

---

(³) Dice el tribunal de instancia:

"Se alegó por el demandante que no se hizo la transacción directamente con la corporación, porque hubo dificultades con la Junta de Planes. Ninguna prueba fuera de su testimonio ofreció el demandante para sustanciar su afirmación. Aparece del Exhibit 2 del demandante que la Junta de Planes aprobó la segregación de dos cuerdas y media de la finca de Latoni en 27 de enero de 1960. Eso fue poco más de dos meses de haberse aprobado por los accionistas de la corporación la compra del terreno. La Escritura de Segregación, Compraventa y Agrupación de las parcelas de media cuerda y dos cuerdas y media se hizo con fecha 21 de enero de 1960, seis días antes de haber la Junta de Planificación aprobado las segregaciones propuestas por el demandante y Latoni, sin embargo, ya en esa escritura se da cuenta por el notario de dicha aprobación. El testigo José Rodríguez Collazo declaró que al 31 de diciembre de 1961 no había nada en la Junta de Planificación con respecto a dificultades de la segregación de las dos cuerdas y media de la finca de Latoni. Ese testimonio no fue rebatido en forma alguna. Si ello es así y la Junta de Planificación aprobó en 27 de enero de 1960 la segregación, se hace difícil ver dónde surge el problema de dificultades en la tramitación de la segregación en la Junta de Planificación. Observamos de la Escritura de Venta de las dos cuerdas y media segregadas por Latoni que se hizo el 21 de enero de 1960 que no debió haber motivos, con vista de la aprobación impartida por los accionistas a la compra de dicho terreno en 20 de noviembre de 1959, para que no se hubiera hecho el traspaso y agrupación directamente de Latoni a la corporación."

(⁴) La finca de la corporación estaba separada de la parcela de 2.50 cuerdas por un camino privado denominado Santa Ana. De la transcripción no hemos podido determinar con certeza a quién pertenece dicho camino, bien a Fernández o la Central Juanita, Inc., o si el mismo constituye la servidumbre de paso a favor de Central Juanita, Inc., a que se refiere la titulación.

la disposición reglamentaria que requiere la intervención de dicho organismo cuando la segregación es menor de cinco cuerdas, 23 R.&R.P.R. secs. 10–1 y 10–3, es que Fernández luego segrega 5.05 cuerdas y las transfiere a la corporación. Además el plano de mensura de esta última parcela no fue preparado hasta el 17 de septiembre de 1961. Puede concederse que todo este trámite no se verificó con la prontitud deseable. Ello se explica por la relación existente entre las partes y por la confianza que necesariamente permea las corporaciones de familia. Estamos plenamente satisfechos de que penalizaríamos injustificadamente al recurrente si sostuviéramos que este retiro de $25,000 constituyó un dividendo implícito cuando la impresión que prevalece luego de un examen de todas las circunstancias es que su intención y propósito fue propiciar un acuerdo corporativo.

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 14 de noviembre de 1963, para excluir la suma de $25,000 imputada al recurrente como dividendo implícito en el año 1960, y así modificada, se confirmará.*