Manuel Viñas Sorbá y Jorge E. López Ramírez, demandantes y recurrentes, *v.* Secretario de Hacienda, demandado y recurrido.

*Número:* R-67-99          *Resuelto:* 12 de mayo de 1969

284

*María Genoveva R. de Carrera* y *Luis E. García Benítez,* abogados de los recurrentes; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados del recurrido.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Los señores Viñas Sorba y López Ramírez en unión a otro socio se dedican al negocio de la construcción. Para los años contributivos en controversia (1958 a 1960 ambos inclusive), tenían las participaciones que se indican en las siguientes empresas:

| Corporación | Viñas | López | Otro Socio |
|---|---|---|---|
| 1. Vilo Corporation | 50% | 50% | —— |
| 2. Wideland Construction Corp. | 33⅓% | 33⅓% | (33⅓%) |
| 3. Modern Construction Corp. | 41⅔% | 41⅔% | (16⅔%) |
| 4. Condado Enterprises, Inc. | 50% | 50% | —— |

El Secretario de Hacienda ordenó una investigación de las planillas radicadas por los socios para los años 1958 a 1960 y terminada dicha investigación les notificó deficiencias contributivas a los recurrentes. Los contribuyentes acudieron ante el Tribunal Superior alegando error en las determinaciones del Secretario y solicitando que se dejaran sin efecto las deficiencias. El tribunal desestimó las demandas excepto en cuanto a ciertas partidas de menor importancia.

Las deficiencias notificadas por el Secretario de Hacienda y que están envueltas en este recurso son las siguientes:

—AÑO 1958—

| | | Viñas Sorbá | López Ramírez |
|---|---|---|---|
| 1) | Dividendos de Vilo Corp. | $45,201.46 | $46,420.00 |
| 2) | Dividendos de Wideland Corp. | 14,870.24 | 720.29 |
| 3) | Gastos de representación (cada uno) | 2,000.00 | 2,000.00 |
| | Total Ajuste | $62,071.70 | $49,140.29 |

4) Más penalidad del 5% en ambos casos, Sec. 293(a).
5) Penalidad Sec. 294(d)(2) al señor López Ramírez.

—AÑO 1959—

| | | Viñas Sorbá | López Ramírez |
|---|---|---|---|
| 1) | Dividendos de Modern Construction Corporation | $34,407.99 | $ 9,054.32 |
| 2) | Dividendos Wideland Corp. | 875.00 | 875.00 |
| 3) | Gastos de representación (cada uno) | 2,000.00 | 2,000.00 |
| | Total Ajuste | $37,282.99 | $11,929.32 |

4) Más penalidad del 5% para ambos y
5) Penalidad Sec. 294(d)(2) para el señor López Ramírez.

—AÑO 1960—

| | | Viñas Sorbá | López Ramírez |
|---|---|---|---|
| 1) | Dividendos de Modern Construction Corporation | $11,977.50 | $17,977.50 |
| 2) | Gastos de representación | 2,500.00 | 2,000.00 |
| | Total Ajuste | $14,477.50 | $19,977.50 |

3) Más penalidad del 5% para ambos, Sec. 293(a).
4) Penalidad al señor López Ramírez, Sec. 294(d)(2).

Las partidas de las cuales surgen las deficiencias im-

putadas a los recurrentes se dividen en tres categorías principales: (a) dividendos implícitos, (b) gastos de representación y (c) penalidades.

## —AÑO 1958—

El 16 de diciembre de 1958 Vilo Corporation expidió dos cheques a favor de Condado Enterprises por un total de $92,840 con el fin de que esta empresa adquiriera un solar. Se hizo un cargo a la cuenta de cada recurrente con Vilo Corporation por la mitad de esa suma, o sea, $46,420. En los libros de Condado Enterprises se registró un crédito por igual cantidad a favor de cada recurrente. Condado Enterprises adquirió el solar. Cinco meses después de la entrada original, el 31 de mayo de 1959, el auditor externo hizo una corrección en los libros de Vilo Corporation eliminando de las cuentas de los recurrentes las cantidades que se les habían cargado y en su lugar cargando los $92,840 en su totalidad a Condado Enterprises. Sin embargo, en los libros de esta última corporación no se hizo cambio alguno y dicha empresa continuó reconociendo un crédito de $46,420 a favor de cada recurrente. Cuando en 1960 fue liquidada Condado Enterprises, su único activo, el solar, fue adjudicado a Viñas y a López. Los recurrentes por su parte, en sus planillas de ingreso para 1960 declararon una ganancia de capital por su adquisición del solar y reclamaron su préstamo a Condado Enterprises como parte del costo del solar para determinar la ganancia. No prestó garantía colateral para asegurar la devolución del dinero retirado de Vilo Corporation, ni se le cargó intereses por ese dinero. En 1958 Vilo tenía acumulado un sobrante de $146,444.03, pero no declaró dividendos.

El Secretario de Hacienda clasificó esta transacción como un pago implícito de dividendos de Vilo Corporation a sus dos únicos accionistas, los cuales a su vez prestaron el dinero a Condado Enterprises. Debido a que la cuenta de Viñas con Vilo tenía un crédito a favor de Viñas de $1,218.54 se

le imputó a éste un dividendo de solamente $45,201.46 mientras que a López se le imputó como dividendo la partida completa de $46,420.00.

Los recurrentes alegan que la transacción fue un préstamo hecho por Vilo Corporation directamente a Condado Enterprises, siendo erróneas las entradas originales en los libros en las cuales se cargaba la suma envuelta a los recurrentes. En la alternativa alegan que si se determina que se trataba de un pago a los accionistas, fue en calidad de préstamo y no como distribución de dividendos.

El juez sentenciador luego de escuchar y pesar toda la prueba sometida concluyó que se trataba en realidad de una distribución de dividendos a favor de los recurrentes, los cuales a su vez hicieron un préstamo a Condado Enterprises. Los recurrentes insisten que erró el tribunal en esa conclusión y que se trató en realidad de un préstamo hecho por Vilo Corporation directamente a Condado Enterprises, o en la alternativa a los recurrentes.

La determinación del juez sentenciador debe mantenerse a menos que no haya en el récord prueba suficiente para sostenerla. *Buscaglia, Tes.* v. *Tribl. Contribuciones*, 69 D.P.R. 514, 516 (1949) ; *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509, 530 (1954) ; *Casanovas & Cía.* v. *Soltero*, 61 D.P.R. 653, 654 (1943).

La alegación de los recurrentes de que se trató de un préstamo de Vilo Corporation directamente a Condado Enterprises está contradicha por las entradas en los libros de las dos corporaciones en cuestión. En los libros de Vilo se cargó originalmente la suma envuelta a los dos recurrentes y no a Condado Enterprises, y en los libros de esta última corporación aparecía un crédito a favor de los recurrentes y no a favor de Vilo. Las entradas en los libros de contabilidad no son prueba absoluta de las transacciones anotadas y de ser contrarias a los hechos tienen que ceder ante éstos. 1 Mer-

tens, *Law of Federal Income Taxation*, § 9.06. Como expresamos en *Inter-American Orange Crush* v. *Srio. Hacienda*, 81 D.P.R. 293 (1959) citando dictámenes anteriores, ". . . la determinación del ingreso tributable . . . descansa en hechos ciertos y no en teorías, tecnicismos o entradas en los libros de contabilidad." Ver además *Vilanova* v. *Secretario de Hacienda*, 83 D.P.R. 74, 91 (1961). Lo determinante es la intención de las partes según surja de los hechos. Cf. *Krueger* v. *Srio. de Hacienda*, 89 D.P.R. 345, 354 (1963).

Los hechos y circunstancias de este caso, sin embargo, tienden a corroborar las entradas en los libros y a negar la alegación de los recurrentes de que se trató de un préstamo de Vilo Corporation a Condado Enterprises directamente. La Junta de Directores de Vilo Corporation aprobó un "préstamo" a los recurrentes por las cantidades envueltas. Cuando fue liquidada Condado Enterprises el solar, su único activo, fue adjudicado a los recurrentes y no a Vilo Corporation. Cuando en 1960 declararon ganancia de capital por su adquisición del solar ambos recurrentes reclamaron como parte del costo su préstamo a Condado Enterprises. Actuó pues correctamente el tribunal al descartar la teoría de los recurrentes de que se trató de un préstamo de Vilo Corporation a Condado Enterprises directamente.

▆▆ Los hechos tampoco apoyan la teoría alternativa de los recurrentes en el sentido de que se trató de un préstamo de Vilo Corporation a éstos. Por el contrario, la evidencia tiende a respaldar la determinación del Secretario de Hacienda, en el sentido que la transacción fue una distribución informal de dividendos a los recurrentes. No tiene importancia que no hubiera una declaración formal de dividendos. "Una distribución puede considerarse como un dividendo aunque no haya mediado una acción formal de la junta de directores en cuanto a su declaración. . . ." *Central Igualdad, Inc.* v. *Srio. de Hacienda*, 83 D.P.R. 45, 56 (1961); véase Mertens, *supra*, § 9.11; *Republic Nat. Bank of Dallas, Adm.* v. *United*

*States*, 1 Am. Fed. Tax R.2d 755 (1957). Los recurrentes no ofrecieron garantía colateral alguna por el retiro que hacían, ni pagaron intereses, y cuando Vilo Corporation hizo el pago a sus accionistas tenía acumulado un sobrante de $146,444.03 y no declaró dividendos en ese año. Tampoco se acordó plan o método de pago. Todos estos factores tienden a indicar que se trató de un dividendo y no de un préstamo. En *Fernández* v. *Srio. de Hacienda*, 95 D.P.R. 429 (1967) nos enfrentamos con una controversia similar a ésta. Allí expresamos que "El factor más importante en la solución del problema que confrontamos es la intención con que se efectuaron los retiros y más concretamente si al momento de realizarse se tenía o no la intención de reintegrarlos al haber corporativo. . . . Son circunstancias importantes a considerar (1) tratándose de una corporación íntima o de familia, el grado de control que tiene el accionista; (2) la proporción que guardan los retiros con la participación del accionista en la corporación; (3) si se han suscrito pagarés u otros documentos para evidenciar la deuda; (4) si se han pactado, cargado o pagado intereses; (5) si se han efectuado abonos al principal; (6) si a pesar de haber sobrante disponible no se han declarado dividendos en efectivo." Aplicando estas normas a los hechos que estamos considerando es inescapable la conclusión de que se trataba de una distribución de beneficios.

Los recurrentes apuntan que se hicieron abonos en sus cuentas, indicativo de que se trataba de préstamos. El tribunal consideró las partidas que los recurrentes alegan constituyen abonos a sus cuentas. Luego de analizar la situación concluyó que "existiendo las condiciones ya indicadas de ausencia de colateral, ausencia de intereses, falta de un plan de pagos de abonos periódicos o intención de pagar, habiendo suficiente sobrante acumulado y ausencia de declaración de dividendos, el tribunal resuelve que no hubo intención de

hacer abonos contra estas partidas y que se trataba de dividendos implícitos."

■ Se imputa a Viñas haber recibido tres partidas diferentes de Wideland: $15,000, $720.29 y $249.95, para un total de $15,970.24, al que se le restan $1,100, el valor de un vehículo de motor entregado por Viñas a la corporación. El total de los dividendos imputados a Viñas como recibidos de Wideland, es, por lo tanto, $14,870.24. Por otro lado a López se le imputa haber recibido $720.29. En detalle las diferentes transacciones envueltas son las siguientes:

Wideland Corporation expidió un cheque por la cantidad de $15,000 a favor de Viñas, cargando dicha cantidad a la cuenta de éste, quien efectivamente cobró el cheque. Durante la investigación y en la demanda se alegó que el recurrente recibió el dinero en calidad de préstamo. Luego, por primera vez en la vista ante el tribunal, se alegó que se trataba de un abono por equipos de construcción vendido por Viñas a Wideland y que el cargo a la cuenta de Viñas fue un error. Wideland tenía en 1958 un sobrante acumulado de $64,844.70 y no declaró dividendos durante ese año. Para sostener esta contención el contribuyente Viñas presentó en evidencia un cheque por $15,000 en el cual aparece que fue expedido por concepto de "abono a cuenta de equipo de construcción" y copia del talonario de dicho cheque del cual surge el mismo concepto para el pago. Presentó también una lista de equipo por valor de $41,500 junto a otro cheque de otra de las corporaciones controladas por Viñas y López de fecha 26 de octubre de 1959 por la suma de $26,500 a favor de Viñas con explicación de que era el equipo sobre el cual Wideland había pagado ya $15,000 y ahora la otra corporación recibía el equipo y pagaba el balance de la deuda. El Tribunal Superior analizó la prueba ofrecida y no le mereció crédito la teoría de la venta de equipo por ciertas incongruencias en la prueba. El tribunal resolvió además que el retiro hecho por Viñas no era un préstamo sino un dividendo pagado por

Wideland. Es conveniente apuntar que en este caso tampoco se pagaron intereses ni se fijó colateral para garantizar el supuesto préstamo. Al rechazar esta evidencia el juez de instancia expresó:

". . . A pesar de que transcurrió más de un año entre un cheque y otro y a pesar de la alegada existencia de la lista de equipo con la misma fecha del segundo cheque y a pesar de que ambos cheques alegadamente tenían una nota sobre su faz indicando que eran abonos en compra de equipo, ambos cheques se contabilizaron con cargo al señor Viñas y al concluir la investigación el 4 de mayo de 1962, no se había corregido ese cargo no obstante haber intervenido los libros el auditor externo señor Clavell.

El Inspector testificó ante el Tribunal que el contable del Demandante le informó que se trataba de un préstamo y no le mostró ni la lista de equipo ni los cheques ofrecidos al Tribunal durante la vista.

Luego de considerar detenida y cuidadosamente la evidencia y el testimonio ofrecido, a este Tribunal no le merece crédito la alegación de tratarse de una venta y resuelve que se trataba de retiro en efectivo y por las circunstancias ya indicadas de falta de plan de pago o abonos, de la no prestación de colateral, ausencia del cargo de intereses y existencia de sobrante, declara esta partida dividendos implícitos."

Plantea el recurrente también que Wideland es una corporación de tres accionistas en la cual cada uno poseía 1/3 de las acciones, y que no es lógico que se pague un dividendo de $15,000 a uno de ellos y nada a los otros dos. Hemos expresado ante una alegación similar que "la ausencia de esta proporción matemática no es decisiva, ya que una distribución puede considerarse como un dividendo aunque . . . la distribución no sea en proporción al interés de cada accionista en el capital corporativo, y aun cuando haya accionistas que no participen en la distribución." *Central Igualdad, Inc.* v. *Srio. de Hacienda*, supra; también autoridades allí citadas; y *West India Mach.* v. *Srio. de Hacienda*, 89 D.P.R. 115, 127 (1963); Mertens, *supra*, § 9.11.

Wideland Corporation expedió un cheque por $3,601.44 a favor de Electrical Construction, Inc. Cargó tanto a Viñas como a López la cantidad de $720.29. El Secretario clasificó esta transacción como el pago de $720.29 en dividendos implícitos a cada recurrente. (Ésta es la única partida de pagos de Wideland que afecta a López en 1958.) Los recurrentes alegan que se trataba de un préstamo hecho a ellos por Wideland. El tribunal de instancia resolvió que se trataba también de un pago de dividendos. No se discutió esta partida ante el tribunal ni se trajo prueba alguna para contradecir la entrada en los libros. El tribunal fundó su determinación en los mismos factores mencionados anteriormente: ausencia de garantía colateral, no pago de intereses, acumulación de sobrante, entradas en los libros, y credibilidad de prueba. No se ha demostrado que el tribunal estuviera equivocado al dictaminar que la partida de $720.29 cargada a cada uno de los socios representaba una distribución de beneficios.

El último pago hecho por Wideland en 1958 consiste en un cheque expedido a favor de Sears Roebuck en pago de una máquina adquirida por Viñas, valorada en $249.95. Se cargó esa cantidad a la cuenta personal de Viñas. Éste alega que se trataba de un préstamo. No se discutió la partida ante el tribunal de instancia, y se resolvió que se trataba del pago de un dividendo a Viñas por las razones expresadas al considerar las transacciones anteriores. Se sostiene también esta determinación.

## —AÑO 1959—

◼ Modern Construction pagó al Secretario de Hacienda $8,059.76 adeudados por Viñas y $8,880.22 adeudados por López en concepto de contribuciones sobre ingresos no retenidas por dichas corporaciones de los sueldos que éstas pagaron a Viñas y López. Por igual concepto Wideland pagó al Secretario $875.00 por cada recurrente. Se cargaron dichas sumas a las cuentas de cada recurrente. En 31 de agosto de

1959 Modern Construction tenía sobrante acumulado de $123,493.96 y Wideland de $156,382.37. Ninguna declaró dividendos ese año. El tribunal recurrido sostuvo la determinación del Secretario de Hacienda en el sentido de que el pago de la contribución por la corporación en efecto equivale al pago de un dividendo a los recurrentes. Éstos alegan que erró el tribunal porque la ley exige a todo patrono retener de los salarios que paga a sus empleados la contribución pagadera por el recipiente del sueldo. Según esta teoría la obligación de pagar la contribución es de la corporación y no del empleado. "Todo patrono que haga pagos de salarios deducirá y retendrá sobre dichos salarios una contribución . . . ." 13 L.P.R.A. sec. 3141(b). "Toda persona obligada a deducir y retener cualquier contribución bajo esta sección deberá . . . rendir una planilla por la misma y pagar dicha contribución al Secretario . . . ." 13 L.P.R.A. sec. 3141(i). "El patrono será responsable al Secretario del pago de la contribución que deberá ser deducida y retenida bajo esta sección, y no responderá a persona otra alguna por el monto de cualquier pago de éstos." 13 L.P.R.A. sec. 3141(k). La disposición reglamentaria correspondiente dispone en parte: "Toda persona obligada a deducir y retener la contribución . . . de los salarios de un empleado, es responsable del pago de dicha contribución sea o no ésta cobrada al empleado. Si por ejemplo el patrono dedujera menos que el monto correcto de la contribución, o si dejare de deducir cualquier parte de la contribución, es responsable por el monto correcto de la contribución . . . . El patrono no será relevado de su responsabilidad del pago de la contribución que se requiera retener, a menos que demuestre que la contribución . . . ha sido pagada." 13 R.&R.P.R. sec. 3141(k)-1. Todas estas disposiciones sostienen la tesis de los recurrentes de que la corporación estaba obligada a hacer los pagos. Eso es cierto. Pero el empleado (el contribuyente) está igualmente obligado. La Sec. 11 de la Ley de Contribución sobre Ingresos

de 1954 dispone que "Se impondrá, cobrará y pagará por cada año contributivo sobre el ingreso neto de todo individuo una contribución . . . ." (13 L.P.R.A. sec. 3011.) Las Secs. 51 y 56 de dicha ley (13 L.P.R.A. secs. 3051 y 3056) obligan a los individuos, lo cual incluye a los receptores de sueldos, como los recurrentes, a rendir planillas y pagar contribuciones computadas sobre su ingreso neto (13 L.P.R.A. secs. 3011 y 3012). La contribución deducida y retenida no es admisible como deducción al receptor del ingreso al computarse su ingreso neto. (13 L.P.R.A. secs. 3141(n).) En otras palabras, el empleado está obligado a pagar una contribución computada sobre su ingreso neto incluyendo la cantidad deducida y retenida por su patrono. Lo que sí se permite al empleado es que "La cantidad deducida y retenida como contribución. . . sobre los salarios . . . será admitida como un crédito al receptor del ingreso contra la contribución impuesta . . . ." (13 L.P.R.A. sec. 3035.) Pero ese crédito contra la contribución que está obligado a pagar el asalariado al igual que todo individuo puede tomarse sólo si su patrono efectivamente le retuvo la contribución. Así surge aún con mayor claridad de las disposiciones reglamentarias pertinentes: "La contribución deducida y retenida en el origen sobre salarios . . . es admisible como un crédito contra la contribución impuesta por esta Ley al receptor de dicho ingreso. Si la contribución ha sido efectivamente retenida en el origen, se concederá crédito o reintegro al receptor del ingreso aunque dicha contribución no haya sido pagada por el patrono al Estado Libre Asociado . . . ." 13 R.&R.P.R. sec. 3035-1. No habiendo sido realmente retenida la contribución en el origen, los recurrentes no tenían derecho a tomar, como lo hicieron crédito alguno por este concepto.

■ Estaban pues obligados a pagar la contribución tanto la corporación, según alegan los recurrentes, como los propios recurrentes, según alega el Secretario de Hacienda y resolvió el tribunal de instancia. Estaban obligados los recurrentes

como individuos sujetos al pago de contribuciones, y Modern Corp. y Wideland como patronos que violaron su obligación de retener en el origen, hasta tanto fuera pagada la contribución. En una situación como ésta en que no se deduce la contribución, la obligación de pagarla es tanto del individuo empleado a quien se le debió retener, como de la corporación que debió retenerla.

■ Irrespectivamente de quién estaba obligado a pagar la contribución es claro que las cantidades pagadas al Secretario de Hacienda constituyen dividendos. El hecho irrefutable y determinante es que Viñas recibió de Modern Construction $8,059.76, y López $8,880.22, por encima de lo que están supuestos a recibir como salario. Ya habíamos dejado consignado que las corporaciones pagaron a los recurrentes su salario completo, sin deducir o retener nada del mismo. Al pagar las corporaciones la contribución, sin haberlas deducido del sueldo de los recurrentes, éstos recibieron un beneficio adicional, o sea, un dividendo.

La otra partida importante comprendida entre los retiros hechos por Viñas en 1959 es un cheque por la cantidad de $26,500 expedido a favor de dicho recurrente por Modern Construction. Esta suma fue cargada al accionista en los libros de la corporación como si se tratara de un préstamo y así se alegó en la demanda, aunque al igual que a las partidas antes consideradas no se cargaron intereses ni se exigió garantía colateral. La corporación tenía acumulado un sobrante en agosto 31 de 1959 de $123,493.96, el cual aumentó a $381,580.95 un año después. No declaró dividendos durante esos años. El tribunal de instancia sostuvo la determinación del Secretario de Hacienda al efecto de que los $26,500 constituía un dividendo pagado por la corporación a Viñas. El recurrente alegó por primera vez en la vista que la entrada en los libros cargando la suma a Viñas fue errónea ya que Viñas recibió ese dinero en pago por cierto equipo de construcción. Sostiene que el pago corresponde al balance

adeudado por el mismo equipo envuelto en la transacción antes considerada, el cual Wideland traspasó a Modern asumiendo ésta la obligación de pagar el balance adeudado, o sea, $26,500.

Lo que antes expusimos respecto al pago de los $15,000 es igualmente aplicable al pago de los $26,500 correspondientes al año 1959.

El Secretario determinó que Viñas recibió dividendos montantes a $34,431.57 en el año 1959. El tribunal dictaminó que ascendían a $34,407.99. Le acreditó una pequeña partida que el Secretario había incluido como dividendos.

Otra partida del total de los alegados dividendos de Modern recibidos por López surge de un cargo de $254.10 hecho en los libros de la corporación a la cuenta de López. El recurrente alega que se trataba de un préstamo. Nada hay en relación a esta partida que la distinga de las que hemos considerado anteriormente.

### —AÑO 1960—

El Secretario de Hacienda imputó a los recurrentes haber recibido dividendos implícitos durante 1960 de Modern Construction por la cantidad de $11,977.50 Viñas y $17,977.50 López. Las transacciones envueltas son las que se exponen a continuación.

■ La primera transacción de 1960 envuelve un cheque por la suma de $15,000 expedido por Modern a favor de los señores Miguel Martorell, Jr., y Milton Rúa. Al efectuar dicho pago se hizo un asiento en los libros de la corporación cargando los $15,000 a la cuenta "terrenos", explicando que se trataba de un pago parcial para la compra de un solar. Once meses más tarde se hizo una corrección en los libros acreditando $15,000 a "terrenos" y cargándolos a las cuentas personales de los recurrentes, $7,500 cada uno. Durante la investigación se informó a los inspectores, y se alegó en la demanda que se trataba de un préstamo de la corporación

a los recurrentes. Luego, en la vista ante el tribunal se alegó que se trataba del pago de una opción de compra de un solar a favor de Modern. Se ofreció en evidencia una carta a estos efectos firmada por Martorell y Rúa, los dueños del terreno. El Tribunal Superior no aceptó la teoría de la opción de compra ni la de préstamo e imputó dividendos a los recurrentes por la cantidad en cuestión.

Los recurrentes sostienen que se trataba del pago por la corporación de una opción de compra de un solar. Se quejan de que "el Tribunal pareció entender que tocaba a los demandantes traer prueba del desenlace de la opción." Los documentos ofrecidos en evidencia por la propia parte recurrente, sin embargo, no sostienen su teoría de que se trataba del pago de una opción de compra sobre el solar. Surge de la carta de los señores Martorell y Rúa acusando recibo del cheque por $15,000 ofrecida en evidencia que "ustedes [Modern Const.] construirán un edificio de condominio en dicho solar y nos pagarán el remanente del precio de compraventa cediéndonos en pago apartamientos en dicho edificio de condominio." Igualmente surge del propio cheque haciendo el pago que ahora está en controversia; dice que es por concepto de "Pago Parcial Solar del Condado".

La prueba documental ofrecida por los propios demandantes no sostienen su teoría de opción de compra. Las entradas originales en los libros demuestran que se trataba del pago parcial por la compra del solar. Al momento de efectuar el pago se cargó a la cuenta de "terrenos" los $15,000 explicando que se trataba de la compra de un solar. A los once meses se modificaron los asientos acreditando $15,000 a terrenos y cargando $7,500 a la cuenta de cada recurrente. Así constaba un año ocho meses después. Al inspector de Hacienda se le informó que se trataba de otro préstamo de la corporación a sus accionistas y así se alegó en las demandas. Es por primera vez en la vista del caso que se adelanta la teoría de que se trataba del pago por

una opción de compra. No hay duda pues, que se trataba de un pago parcial del precio del solar.

Durante 1960 nuevamente Modern expidió varios cheques a favor del Secretario de Hacienda en pago por contribuciones de sus accionistas no retenidas por la corporación. Modern expidió dos cheques por $2,902.50 cada uno, cargando uno a la cuenta de cada recurrente, y luego emitió otros dos cheques por $1,575.00 cada uno, cargándolos en igual forma para un cargo total de $4,477.50 a cada accionista. El tribunal determinó que el pago de esa suma constituía una distribución de dividendos implícitos por Modern. Los recurrentes alegan que no es correcta esa determinación basándose en los mismos argumentos que antes hemos considerado y rechazado.

Modern Construction expidió un cheque por la suma de $6,000 a favor del recurrente López, cargando esa cantidad a la cuenta personal de éste. Alegó el recurrente que el desembolso constituyó un préstamo hecho a él por la corporación. El tribunal sostuvo la determinación del Secretario de Hacienda en el sentido de que se trataba del pago de un dividendo implícito. Aplicando los factores que expusimos en *Fernández* para determinar si la transacción constituye un préstamo o un dividendo, es inescapable concluir que estuvo correcto el tribunal recurrido al concluir que esta suma también constituía una distribución de beneficios.

Además de las anteriores partidas provenientes de los alegados dividendos implícitos recibidos por los recurrentes, están en controversia gastos de viaje y representación reclamados por ambos recurrentes y denegados por el Secretario. Estas partidas las consideraremos conjuntamente porque envuelven cuestiones de derecho comunes y surgen de hechos similares.

■ En 1958 y 1959 cada recurrente reclamó gastos de representación para beneficio de las corporaciones por $2,000. En 1960 Viñas reclamó $2,500 y López $2,000. En los tres

años en cuestión Viñas reclamó un total de $6,500 y López $6,000. El Secretario denegó todas las deducciones reclamadas por este concepto por falta de comprobación. Sostiene que eran gastos de la corporación como tal y que ésta había reclamado en sus propias planillas gastos de representación. El tribunal de instancia sostuvo la determinación del Secretario denegando la deducción reclamada. Señaló el tribunal que no se presentó evidencia o comprobante de los gastos y que las corporaciones en sus propias planillas reclamaron y se le concedieron gastos de representación. Concluye que los gastos envueltos son de la corporación y deducibles únicamente en la planilla de ésta pero no en la de sus oficiales. Es necesario recordar dos reglas básicas expuestas en *Central Igualdad, Inc.* v. *Srio. de Hacienda*, supra, pág. 50. Las deducciones, por constituir una gracia legislativa, deben interpretarse en forma restrictiva. Ver además *Clínica Juliá* v. *Secretario de Hacienda*, supra; *Descartes, Tes.* v. *Tribl. Contribuciones y Ortiz*, 73 D.P.R. 491 (1952); *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 67 D.P.R. 585 (1947), confirmado en 168 F.2d 401 (1948). Corresponde al contribuyente establecer su derecho a la deducción reclamada. *Central Igualdad*, supra.

■ La ausencia de cuentas, comprobantes, facturas, recibos u otros récords no destruye automáticamente el derecho de reclamar una deducción por concepto de gastos de viaje y de representación que sean ordinarios y necesarios. Si cualquier otra evidencia admisible y digna de crédito demuestra que en realidad hubo tales gastos debe concederse una deducción a base de lo que ordinariamente y a la luz de todas las circunstancias del caso y el negocio del contribuyente constituya una cantidad razonable por esos conceptos. *Carrión* v. *Tesorero de P.R.*, 79 D.P.R. 371, 378–379 (1956); *West India Mach.* v. *Srio. de Hacienda*, supra, págs. 129–130. En los dos casos citados aunque se ofreció alguna otra evidencia, la prueba principal presentada para sostener la deducción

reclamada fue la propia declaración del ejecutivo de la corporación. *Carrión*, supra, págs. 373 y 374 especialmente el escolio 1 en esta última página; *West India Mach.*, supra, pág. 129.

Señala el tribunal además que las corporaciones en sus propias planillas tomaron deducciones por estos mismos conceptos. Este hecho en sí, y por sí solo, no derrotaría la reclamación de los recurrentes. De tratarse de otros gastos, que no sean una repetición de los deducidos por las corporaciones, en los cuales realmente hayan incurrido los contribuyentes, para beneficio de su propio negocio, tendrían derecho a reclamarlos independientemente de que las corporaciones hayan reclamado sus propios gastos de representación.

Ahora bien, para que el gasto sea deducible como del negocio, tiene que ser incurrido para fines del negocio del propio contribuyente que reclama la deducción. Si éste incurre en el gasto en conexión con el negocio de otro no lo puede deducir. Una corporación y sus accionistas son entidades contributivas separadas y distintas. El hecho de que un pago hecho por el accionista o director en interés de la corporación lo pueda beneficiar personalmente, normalmente no justifica que el accionista o director pueda deducirlo como gasto de su negocio. Tendría que probar que era su deber en el cumplimiento de sus funciones de director incurrir en gastos no rembolsables por la corporación. Véase, Mertens, *supra*, § 25.12 y § 25.88 y Charles W. Nichols, párr. 63,148 P-H Memo TC.

Si los recurrentes incurrieron en gastos relacionados con el negocio de las corporaciones y en beneficio y por gestiones de éstas, esos gastos serían deducibles por la corporación si los rembolsa a los recurrentes, pero no serían deducibles por éstos a menos que hubieran probado que era su deber como oficiales de la corporación incurrir en estos gastos y que éstos no eran rembolsables. Como los gastos en con-

troversia fueron incurridos por los recurrentes en beneficio no de su propio negocio sino del negocio de las corporaciones por tanto no son deducibles por ellos.

■ El Secretario de Hacienda impuso a los recurrentes penalidad del 5% del monto total de las deficiencias por considerar que dichas deficiencias se debieron a negligencia o menosprecio intencional de las reglas y reglamentos. Ley de Contribuciones sobre Ingresos de 1954, Sec. 293, 13 L.P.R.A. sec. 3293(a).(¹) El tribunal sentenciador sostuvo esa determinación. La impugnan los recurrentes alegando que actuaron bajo la convicción de que les asistía la razón. La decisión sobre esta cuestión dependerá de si considerados todos los hechos y circunstancias se concluye que hubo negligencia o menosprecio intencional por parte de los recurrentes al pagar sus contribuciones. Véase, *Fiddler* v. *Srio. de Hacienda*, 85 D.P.R. 316, 329 (1962).

■ Cada caso hay que resolverlo por sus propios méritos y circunstancias, *Fiddler* v. *Srio. de Hacienda*, supra. De los libros del propio contribuyente surgía obligación de tributar, y no se hizo. Cf. *Vilanova* v. *Secretario Hacienda*, supra, pág. 92. Es cierto que luego en la vista del caso se alegó que las entradas eran erróneas, etc. Aun asumiendo que se determine que no hubo negligencia respecto a todas las partidas, la negligencia o menosprecio intencional en cuanto a una de las partidas de las que componen la defi-

---

(¹) Dispone así esta sección:

"(a) Negligencia.—Si cualquier parte de cualquier deficiencia se debiere a negligencia o a menosprecio intencional de las reglas y reglamentos, pero sin la intención de defraudar, el 5 por ciento del monto total de la deficiencia (en adición a dicha deficiencia) será tasado, cobrado y pagado en la misma forma que si fuera una deficiencia, excepto que las disposiciones de la sec. 3292 de este título relativas a intereses sobre deficiencias, no serán aplicables.

(b) Fraude.—Si cualquier parte de cualquier deficiencia se debiere a fraude con la intención de evadir la contribución, entonces el 50 por ciento del monto total de la deficiencia (en adición a dicha deficiencia) será así tasado, cobrado y pagado."

ciencia bastaría para que se imponga la penalidad sobre la totalidad de las deficiencias encontradas. No importa que una parte de la deficiencia se deba a negligencia y el resto no. Si hubo negligencia en cuanto a cualquiera de las partidas que forman la deficiencia se impondrá la penalidad sobre el monto total de la deficiencia. Así lo resolvimos en *Quiñones* v. *Sec. de Hacienda*, 77 D.P.R. 109, 111–113 (1954). Ciertamente es forzoso concluir de todo lo anteriormente expuesto que de los propios libros de los contribuyentes surje la obligación de incluir las partidas que dieron base a las deficiencias notificadas.

■ Se impuso otra penalidad adicional en cada año en cuestión al recurrente López solamente. Dicho recurrente rindió declaración de contribución estimada—de acuerdo con lo dispuesto por la Sec. 58(a) de la Ley (13 L.P.R.A. sec. 3058(a))—que resultó ser mucho menor que la contribución determinada luego. Se le impuso la penalidad prevista por la Sec. 294(d)(2) (²) de la Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3294(d)(2)). Argumenta el recurrente que las contribuciones estimadas fueron tan bajas debido a la naturaleza y *modus operandi* de sus negocios donde se operaba a base de contratos que podían o no realizarse.

Aun aceptando esa alegación y dando por ello un margen de duda al recurrente resulta que las contribuciones estimadas fueron tan extremadamente bajas que no procede eximirlo de la penalidad. Veamos.

_____

(²) Dispone así dicha sección:

"(2) *Estimado substancialmente bajo de la contribución estimada.*— Si el 80 por ciento de la contribución (determinada sin considerar los créditos bajo las secs. 3032 y 3035 de este título), en el caso de individuos que no sean agricultores que ejerciten una opción bajo la sec. 3060(a) de este título, . . . excede la contribución estimada (aumentada por tales créditos), se adicionará a la contribución una cantidad igual a tal exceso, o igual al 6 por ciento del monto por el cual tal contribución así determinada excede la contribución estimada así aumentada, cualquier que sea la menor."

En 1958 López radicó planilla estimando contribución de $500. En su planilla final reportó contribución por $8,612.22 alegando una retención en el origen de $2,974.40, que sumado a los $500 da un monto total de $3,474.40. La cantidad estimada resulta a todas luces excesivamente baja. Ni siquiera se acerca al 80% de la final. Y la ley dispone que si es menos del 80% procede imponer la penalidad. Ver escolio (2).

Para el año 1959 ocurre algo similar. López informó y pagó contribución estimada de $200. En su planilla final determinó contribución de $5,755.89. Por las mismas razones expuestas para 1958 procede la penalidad.

Para 1960 López estimó una contribución de $1,000. En su planilla determinó una contribución final de $22,908.25. O sea, la contribución estimada fue menos de 5% de la final informada, la cual además fue ajustada a $37,632.12. Es claro que debe imponerse la penalidad.

*Por todo lo anteriormente expuesto procede confirmar las sentencias apeladas.*