Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| ANTONIO LUIS RIVERA GUZMÁN<br><br>Peticionario<br><br>Vs.<br><br>SANDRA VISCAL RODRÍGUEZ<br><br>Recurrida<br><br>RISCAL, INC.<br>Parte Nominal con Interés | KLCE202400239 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm. BY2019CV00243<br><br>Sobre:<br><br>Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de octubre de 2024.

Comparece el señor Antonio Luis Rivera Guzmán (en adelante, parte peticionaria o señor Rivera Guzmán) mediante el recurso de epígrafe, y nos solicita la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 7 de noviembre de 2023.[1] En el referido dictamen, el foro recurrido declaró No Ha Lugar las dos solicitudes de sentencia sumaria parcial presentadas por el Sr. Rivera Guzmán.

La parte peticionaria radicó una *"Urgente Moción en Auxilio de Jurisdicción Solicitando Paralización de los procedimientos ante el TPI".* La cual declaramos *Ha Lugar* el 2 de mayo de 2024.

Por los fundamentos que expondremos a continuación, se deja sin efecto la paralización de los procedimientos, se expide el auto de *certiorari* y se *confirma* la *Resolución* del TPI.

---

[1] Notificada el 8 de noviembre de 2023.

Número Identificador

SEN2024 _____

**I.**

El presente caso tiene su génesis el 17 de enero de 2019 cuando el Sr. Rivera Guzmán, presentó una *Demanda* sobre interdicto y remedios especiales, bajo la Ley General de Corporaciones, acción directa, acción derivativa y daños y perjuicios, en contra de la señora Sandra Viscal Rodríguez (en adelante, Sra. Viscal Rodríguez) y Riscal Inc., (en adelante Riscal Inc. o la corporación).[2] Posteriormente, el 7 de octubre de 2019, el Sr. Rivera Guzmán presentó una *Demanda Enmendada.*[3] En la misma, alegó que contrajo nupcias con la Sra. Viscal Rodríguez el 3 de septiembre de 1989 bajo el régimen económico de Sociedad Legal de Gananciales. Indicó que, durante el matrimonio, habían organizado la corporación codemandada Riscal, Inc. cuyo propósito principal era operar una clínica veterinaria llamada Dorado Veterinary Hospital & Hotel. El 28 de noviembre de 2011 el vínculo matrimonial entre él y la Sra. Viscal Rodríguez quedó disuelto.[4] A consecuencia del divorcio, este sostiene que es dueño de un 50% de las acciones, no obstante, adujo que habían estipulado varios acuerdos de coadministración de Riscal, Inc. y que estos fueron incluidos en la referida sentencia de divorcio, pero que estos no se habían cumplido.

Sobre estos acuerdos, arguyó que la Sra. Viscal Rodríguez tenía control exclusivo de las operaciones, bienes y administración de la corporación y que esta no le había permitido acceso a los libros de la corporación, ni había rendido cuentas por sus gestiones administrativas desde el año 2011. Añadió que Riscal Inc. había violado las disposiciones contenidas en la Ley General de Corporaciones, Ley Núm. 164-2009[5], debido a que no había

---

[2] Apéndice del recurso, en las págs. 469-511.
[3] Apéndice del recurso, en las págs. 547-592.
[4] Disolución fue declarada mediante *Sentencia Nunc Pro Tunc,* (Sentencia de Divorcio) dictada por el TPI de San Juan en el caso civil KDI20110592.
[5] 14 LPRA sec. 1501.

celebrado una reunión de accionistas, ni había electo directores u oficiales corporativos. Señaló que a pesar de que la corporación había acumulado capital del 2011 al 2017, él no había recibido pago en concepto de dividendos. No obstante, expuso que la Sra. Viscal Rodríguez se había concedido beneficios, compensaciones y préstamos simulados de los haberes de Riscal, Inc., y que estos constituían dividendos implícitos. Consecuentemente, estableció que esta última operaba la corporación para su beneficio personal y no otorgaba a su persona beneficio alguno de las operaciones corporativas.

El Sr. Rivera Guzmán señaló que el 9 de enero de 2019 solicitó inspeccionar y fotocopiar los libros de Riscal, Inc. y sus subsidiarias, bajo la potestad que le concedía el Artículo 7.10 de la Ley General de Corporaciones,[6] *supra*. Esbozó que la razón era determinar el valor de las acciones de la corporación, si tenía o había tenido capacidad para pagar dividendos y si estaba siendo operada conforme a derecho. Añadió que había solicitado que la inspección comenzara el 18 de enero de 2019 durante las horas laborables de la corporación y que el 15 de enero de 2019 le envió a la Sra. Viscal Rodríguez una lista de libros y documentos que solicitaba inspeccionar, sin embargo, el 16 de enero de 2019 esta última le notificó su oposición a lo solicitado.

En atención a este último asunto, el Sr. Rivera Guzmán mencionó que a pesar de que el Sr. Viscal Rodríguez había representado bajo juramento en el Informe Anual de 2017 que la corporación tenía $514,118.00 en capital acumulado, $422,365.00 en activos corrientes, $241,235.00 en propiedad y equipos y $187,500.00 en otros activos, la Sra. Viscal Rodríguez había alegado que la corporación no estaba generando ingresos, no tenía fondos

---

[6] 14 LPRA sec. 3650.

disponibles ni cuenta bancaria, mediante un correo electrónico enviado a la representación legal del demandante. Indicó que las representaciones realizadas por esta última constituían una admisión de que se estaba apropiando de los fondos y bienes de la corporación y/o estaba dejando de reconocer como bienes de la corporación los fondos producidos por la gestión profesional veterinaria, esto, en contradicción a la intención y práctica de ambos accionistas al momento de organizar la corporación.

Sobre la corporación, el Sr. Rivera Guzmán arguyó que debido a que Riscal Inc., no había celebrado una reunión de sus accionistas desde el año 2011, la Sra. Viscal Rodríguez ostentaba posiciones como oficial corporativo de forma ilegal y *ultra vires*. Por esto, solicitó que el tribunal ordenara su remoción de la de los puestos en la corporación desde septiembre de 2011 hasta el presente y la celebración de la reunión ordinaria de los accionistas para designar la Junta de directores y los oficiales de la corporación, según establecido por los Artículos 7.01 y 7.15 de la Ley General de Corporaciones.[7] Sostuvo que las referidas prácticas ilegales se estimaban en una cantidad no menor de $1,000,000, asimismo solicitó una cantidad no menor de $1,000,00 en daños económicos y angustias mentales, y una cantidad no menor de $50,000 en costas, gastos, intereses pre y post sentencia.

Posteriormente, el 15 de diciembre de 2019 la Sra. Viscal Rodríguez presentó una *Contestación a segunda demanda enmendada*.[8] En síntesis, adujo que para entender los motivos de los remedios solicitados por el Sr. Rodríguez Guzmán, era necesario que el tribunal tomara conocimiento de la relación entre las partes, los pleitos existentes entre ellos e incluyó un resumen de los trámites relacionados al divorcio entre las partes y la liquidación de

---

[7] Ley Núm. 164-2009, 14 LPRA secs. 3641 y 3655.
[8] Apéndice del recurso, en las págs. 547-592.

la comunidad de bienes post ganancial de estos con su correspondiente explicación.

En cuanto a los dividendos reclamados por el Sr. Rodríguez Guzmán, expuso que representaban una cantidad exagerada utilizada para inflamar el ánimo del tribunal toda vez que el propio demandante, en el procedimiento de liquidación de la comunidad post ganancial había alegado que el capital de la corporación había incrementado en $89,959. Recalcó que el hecho de que una corporación tuviera un capital acumulado no significaba que tuviera la capacidad de pagar dividendos y que se requería el análisis de la condición financiera de Riscal, Inc. antes de tomar una determinación final en cuanto al pago de estos y que el pago de dividendos quedaba a entera potestad de la Junta de directores, atendiendo las necesidades y situación económica de la corporación. Alegó que la corporación no había declarado dividendos, no tenía fondos para pagarlos, y que su único activo era una propiedad inmueble comercial.

La señora Viscal Rodríguez manifestó que no había recibido compensación alguna ni préstamos simulados de la corporación que no fuera su salario como administradora. Explicó que conforme al acuerdo de coadministración no existían beneficios algunos para entregarle al Sr. Rivera Guzmán hasta que culminara la liquidación de los bienes gananciales. Añadió que este último había alegado que un préstamo era parte del capital de una corporación y que esto constituía una inobservancia de derecho. Por todo lo antes expuesto, solicitó que el TPI ordenara la disolución de la corporación Riscal, Inc., denegara la solicitud del remedio interdictal del Sr. Rivera Guzmán y encausara los procedimientos por vía ordinaria. Además, solicitó que se condenase a este último al pago de costas y honorarios de abogado por temeridad y abuso de los procedimientos ante el tribunal.

Luego de varias instancias procesales, el 30 de diciembre de 2022 el Sr. Rivera Guzmán presentó una moción solicitando una primera sentencia sumaria parcial en la que se adjudicara que: 1) la corporación Riscal, Inc. era dueña de las operaciones de la clínica veterinaria Dorado Veterinary Hospital & Hotel 2) el Sr. Rivera Guzmán era dueño de 50% de las acciones de capital de la corporación Riscal, Inc. y 3) la Sra. Viscal Rodríguez obtuvo dividendos implícitos sobre los cuales el Sr. Rodríguez Guzmán tenía derecho a recuperar la mitad.[9]

Ese mismo día, el Sr. Rivera Guzmán presentó una segunda solicitud de sentencia sumaria en la que solicitó que el tribunal adjudicara la reclamación de deberes fiduciarias por impago de préstamos tomados a nombre de la corporación.[10]

En respuesta, el 21 de febrero de 2023 la Sra. Viscal Rodríguez presentó sus correspondientes oposiciones a las solicitudes de sentencia sumaria. Sobre la primera solicitud presentada, adujo que los ingresos generados por la Sra. Viscal Rodríguez en el ejercicio de su profesión de veterinaria haciendo negocios como Dorado Veterinary Hospital & Hotel eran privativos y que dicha práctica no pertenecía a Riscal Inc. De otra parte, en cuanto a la segunda solicitud de sentencia sumaria sobre el impago de alegados préstamos de la corporación esta esbozó que no había tomado préstamo alguno a la corporación Riscal Inc., ni había violado los deberes de fiducia hacia la misma.[11]

El 4 de abril de 2023, el Sr. Rodríguez Guzmán presentó réplicas a las oposiciones de la Sra. Viscal Rodríguez. En ambas mociones, argumentó que esta última no había presentado prueba para controvertir los hechos materiales presentados en las mociones

---

[9] Apéndice del recurso, en las págs. 758-781.
[10] Apéndice del recurso, en las págs. 1159-1174.
[11] Apéndice del recurso, en las págs. 3128-3177 y en las págs. 3178-3189.

de sentencia sumaria, y que por lo tanto procedía que tribunal los diera por admitidos e incontrovertidos.[12]

Luego de varios trámites procesales, el Tribunal de Primera Instancia declaró No Ha Lugar las solicitudes de sentencia sumaria parcial presentadas por el Sr. Rivera Guzmán. Según lo dispuesto en la Regla 36 de Procedimiento Civil, *supra*, esbozó las siguientes determinaciones de hechos incontrovertidos:

1. Sandra Viscal Rodríguez y Antonio Luis Rivera Guzmán contrajeron matrimonio el 3 de septiembre de 1989.

2. Las partes se divorciaron el 28 de noviembre de 2011, mediante Sentencia *Nunc Pro Tunc*, dictada por el Tribunal de Primera Instancia, Sala Superior de Sn Juan, en el caso civil número KDI2011-0592 (702).

3. Los acuerdos de coadministración de los bienes gananciales incluidos en la Sentencia de Divorcio tendrán vigencia hasta que culmine la liquidación [de] la comunidad post ganancial.

4. La estipulación número 15 del Informe Final del Comisionado Especial, emitido en el caso de liquidación de la comunidad post ganancial, *Sandra Viscal Rodríguez v. Antonio Rivera Guzmán*, caso civil número KAC2012-1222, lee de la siguiente manera:

   Desde la separación de las partes y posterior al divorcio, la corporación Riscal Inc., que administra la demandante, ha continuado operando en la propiedad inmueble de la corporación en Dorado.

5. La estipulación número 16 del Informe Final del Comisionado Especial, emitido en el caso de liquidación de la comunidad post ganancial, *Sandra Viscal Rodríguez v. Antonio Rivera Guzmán*, caso civil número KAC2012-1222, lee de la siguiente manera:

   Dra. Viscal continúa rindiendo servicios profesionales a través de la corporación Riscal, Inc., que es dueña del inmueble, clínica veterinaria en Dorado, donde la Dra. Viscal rinde estos servicios. La corporación Riscal ha mantenido el uso exclusivo del inmueble.

6. Riscal, Inc. fue incorporada por el Ingeniero, Antonio Luis Rivera.

7. Según el Certificado de Incorporación, Riscal, Inc. autorizó la emisión de diez mil acciones comunes con valor par de cien dólares cada una, para un capital autorizado de un millón de dólares.

8. Los propósitos y objetivos de la corporación establecidos en el Certificado de incorporación de Riscal, Inc. no incluyen rendir servicios de medicina veterinaria.

9. El Certificado de Incorporación de Riscal, Inc. contiene cláusulas de suscripción preferente que impiden que los accionistas pignoren, vendan o dispongan de sus acciones sin que medie el consentimiento unánime de los demás accionistas.

---

[12] Apéndice del recurso, en las págs. 3190-3249 y en las págs.3150-3260.

10. Uno de los propósitos de la corporación Riscal, Inc. incluido en el Certificado de Incorporación es:

Dedicarse al negocio de la construcción, el desarrollo de bienes raíces y la venta y arrendamiento de todo tipo de edificaciones y estructuras, para propósitos tanto comerciales como residenciales o de cualquier otra índole o naturaleza, a ser desarrollados tanto para la venta como para alquiler, incluyendo además la administración de los mismos, así como todo tipo de actividad o gestiones relacionados con tales negocios, tanto de naturaleza directa como indirecta. Todo servicio profesional necesario para llevar a cabo cualesquiera de las actividades y/o servicios antes mencionados será contratado por la Corporación y realizado por personal debidamente cualificado y licenciado.

11. En los años 2011, 2012, 2014 y 2016, la codemandada, Viscal, reportó en sus planillas de contribución sobre ingresos ser empleada asalariada de Riscal, Inc.

12. En los Informes del Seguro del Desempleo e Incapacidad, sometidos al Departamento del Trabajo por Riscal, Inc. en los años 2012, 2013, 2016, 2017, 2018 y 2019, se ha incluido a la codemandada, Viscal Rodríguez, como empleada de la corporación.

13. El 29 de diciembre de 2020, el contable Edgardo Cruz Quipo declaró bajo juramento que desde que se organizó Riscal, Inc., los doctores Rivera Guzmán y Viscal Rodríguez reportaban los ingresos generados en la clínica veterinaria de Dorado como ingresos de la corporación.

14. El 29 de diciembre de 2020, el contable Edgardo Cruz Quipo declaró bajo juramento que Viscal Rodríguez reportaba que era empleada de Riscal, Inc. por el asesoramiento que había recibido de él.

De igual forma, desglosó las siguientes determinaciones sobre hechos en controversia:

1. Si Riscal, Inc. ha brindado servicios de medicina veterinaria.
2. Si Riscal, Inc. administra la clínica Dorado Veterinary Hospital.
3. Si Riscal, Inc. ha sido administrada conforme a la ley vigente en nuestro ordenamiento.
4. Si Riscal, Inc. ha sido administrada conforme a los acuerdos contenidos en la Sentencia de Divorcio.
5. La titularidad de las acciones de Riscal, Inc.
6. Si la codemandada, Sandra Viscal Rodríguez, ha cobrado dividendos implícitos de Riscal, Inc.
7. La responsabilidad, si alguna, de la parte demandada, por los daños alegados por el demandante.

El 27 de noviembre de 2023, el señor Rivera Guzmán radicó una *Moción de Reconsideración*.[13] El 3 de enero de 2024, la Sra. Viscal Rodríguez presentó una oposición a la reconsideración.[14] Luego de evaluar los escritos presentados, el 26 de enero de 2024,

---

[13] Apéndice del recurso, en las págs. 3323-3336.
[14] Apéndice del recurso, en las págs. 3337-3345

el TPI emitió la *Resolución* denegando la solicitud de reconsideración.[15]

En desacuerdo, el 8 de abril de 2024, el Sr. Rivera Guzmán, recurrieron ante nos mediante el recurso de epígrafe y plantean los siguientes señalamientos de error:

A. EN CUANTO A AMBAS MOCIONES DE SENTENCIA SUMARIA PARCIAL, EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL REHUSAR CONFERIRLE A LAS ADMISIONES, TESTIMONIOS BAJO JURAMENTO Y ESTIPULACIONES DECLARADOS POR LA RECURRIDA EL EFECTO LEGAL Y VALOR PROBATORIO QUE DISPONE EL DERECHO.

B. EN CUANTO A AMBAS MOCIONES DE SENTENCIA SUMARIA PARCIAL, EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL REHUSAR APLICAR LA NUEVA REGLA 36.3 (b) & (c) DE PROCEDIMIENTO CIVIL Y AL REHUSAR DAR POR ADMITIDOS LOS HECHOS MATERIALES INCONTROVERTIDOS PRESENTADOS EN LAS DOS MOCIONES DE SENTENCIA SUMARIA PARCIAL Y QUE NO FUERON NI OPUESTOS NI CONTROVERTIDOS CON PRUEBA ALGUNA POR LA RECURRIDA.

C. EN CUANTO A LA PRIMERA MOCIÓN DE SENTENCIA SUMARIA PARCIAL EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL REHUSAR APLICAR LA DOCTRINA DE "LOS ACTOS PROPIOS CORPORATIVOS" DE SANTIAGO APONTE V. RODRÍGUEZ MARTÍNEZ, 181 D.P.R. 204, 217 (2011) Y DOMENECH FERNÁNDEZ V. INTEGRATION CORP. SERVICES, 187 D.P.R. 595, 622-623 (2013) Y AL NO ADJUDICAR QUE COMO CUESTIÓN DE HECHOS Y DE DERECHO LAS OPERACIONES DE LA CLÍNICA VETERINARIA RISCAL INC. ERAN UN ACTIVO DE LA CORPORACIÓN RISCAL INC., DE LO CUAL EL 100% DE SUS ACCIONES DE CAPITAL ERAN UN BIEN GANANCIAL DE LOS EX - CÓNYUGES Y DE LO CUAL CADA CÓNYUGE ERA DUEÑO DE UNA CUOTA ALÍCUOTA DE UN 50%.

D. EN CUANTO A LA PRIMERA MOCIÓN DE SENTENCIA SUMARIA PARCIAL, EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL REHUSAR ADJUDICAR COMO CUESTIÓN DE HECHOS Y DE DERECHO QUE EL DR. RIVERA ERA TITULAR DE UNA CUOTA DEL 50% DEL 100% DE LAS ACCIONES DE CAPITAL DE LA CORPORACIÓN RISCAL INC. SEGÚN LOS ARTS. 327 Y 1322 DEL CÓDIGO CIVIL DE 1930 (31 L.P.R.A §§ 1272 Y 3697), Y QUE TENÍA DERECHO A DISFRUTAR LA PLENA PROPIEDAD DE ESA CUOTA DEL 50% DEL 100% DE LAS ACCIONES MÁS SUS FRUTOS SEGÚN EL ART. 333 DEL CÓDIGO CIVIL DE 1930 (31 L.P.R.A. § 1278) Y LO RESUELTO EN MONTALVÁN RUIZ V. RODRÍGUEZ NAVARRO, 161 D.P.R. 411, 450 (2004).

---

[15] Apéndice del recurso, en las págs. 3346-3347.

E. EN CUANTO A LA PRIMERA MOCIÓN DE SENTENCIA SUMARIA PARCIAL, EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL REHUSAR APLICAR LA DOCTRINA DE "DIVIDENDO IMPLÍCITOS" DE FERNÁNDEZ V. SRIO DE HACIENDA, 95 D.P.R. 429 (1967) Y IÑAS SORBÁ V. SRIO. DE HACIENDA, 97 D.P.R. 282 (1969), Y DE DETERMINAR COMO CUESTIÓN DE HECHOS Y DE DERECHO QUE EL DR. RIVERA, COMO TITULAR DE UNA CUOTA DEL 50% DEL 100% DE LAS ACCIONES DE CAPITAL DE LA CORPORACIÓN CON IGUALES DERECHOS COMO ACCIONISTA QUE LA DRA. VISCAL, TIENE EL DERECHO A QUE LA DRA. VISCAL LE PAGUE LA MITAD DE LOS $2,453,676.26 EN DIVIDENDOS IMPLÍCITOS QUE ELLA TOMÓ DE RICAL INC. DEL 2012 AL 2020 EN EXCESO DE SU COMPENSACIÓN ORDINARIA SEGÚN EL INFORME PERICIAL INCONTROVERTIDO DEL PERITO CPA LUIS MARTÍNEZ, CANTIDAD QUE EQUIVALE A $1,226,838.14.

F. EN CUANTO A LA SEGUNDA MOCIÓN DE SENTENCIA SUMARIA PARCIAL, EL TPI ERRÓ COMO CUESTIÓN DE DERECHO AL REHUSAR ADJUDICAR COMO CUESTIÓN DE HECHOS Y DE DERECHO QUE LA DRA. VISCAL VIOLÓ SU DEBER FIDUCIARIO DE LEALTAD HACIA LA CORPORACIÓN RISCAL INC. CUANDO SEGÚN LAS PLANILLAS DE RISCAL INC. APROBADAS POR LA DRA. VISCAL Y EL TESTIMONIO INCONTROVERTIDO DEL CONTABLE DE RISCAL INC., ELLA UNILATERALMENTE TOMÓ PRÉSTAMOS ANUALES A LA CORPORACIÓN QUE AL 2017 SUMABAN $402,256.00, Y QUE NUNCA REPAGÓ CANTIDAD ALGUNA, POR LO QUE AHORA DEBÍA DEVOLVERLE ESE DINERO A RISCAL INC. MÁS SUS INTERESES LEGALES.

El 1 de mayo de 2024, la Sra. Viscal Rodríguez presentó su correspondiente *Alegato en Oposición a "Recurso de Certiorari"*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

## A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior.[16] Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la

---

[16] *Rivera et al. v. Arcos Dorados et al,*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[17]
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[18], dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí.[19] Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* funge como complemento a la Regla 52.1 de Procedimiento

---

[17] 32 LPRA Ap. V, R. 52.1.

[18] 4 LPRA Ap. XXII-B, R. 40.

[19] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145, resuelto el 19 de diciembre de 2023; *Rivera et al. v. Arcos Dorados et al.*, 212 DPR, en la pág. 195-196; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[20]

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva.[21] Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio".[22]

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre

---

[20] 4 LPRA Ap. XXII-B, R. 40.
[21] *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005).
[22] *Torres Martínez v. Torres Ghigliotty,* 175 DPR, en la pág. 97.

que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". [23]*

**B.**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009[24], es un vehículo para asegurar la solución justa, rápida y económica de un caso.[25] Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita.[26] Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación.[27]

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio.[28] Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico.[29] Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[30]

---

[23] *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

[24] 32 LPRA Ap. V, R. 36.

[25] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); Oriental Bank v. Caballero García, 212 DPR 671 (2023); G*onzález Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro. v. ELA y otros.*, 211 DPR 455 (2023).

[26] *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022).

[27] 32 LPRA Ap. V, R. 36.1 y 36.2.

[28] *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020).

[29] *Íd.*

[30] *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido.[31] Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido".[32]

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación".[33] Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho.[34]

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte

---

[31] 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, en la pág 8; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).
[32] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).
[33] *León Torres v. Rivera Lebrón*, en la pág. 43.
[34] *Íd.*

sentencia sumaria en su contra.[35] Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil.[36] En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa.[37] De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, la consideración de sus posiciones descansa en la sana discreción del tribunal.

Al atender la solicitud, el tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente.[38] Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida.[39]. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley.[40]

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad.[41] Un hecho material es aquel que puede afectar el resultado de la

---

[35] *Íd.*
[36] *Íd.*
[37] *Íd.*
[38] *E.L.A. v. Cole*, 164 DPR 608, 626 (2005).
[39] *Íd.*, en la pág. 625.
[40] *León Torres v. Rivera Lebrón*, en la pág. 44.
[41] *Acevedo y otros v. Depto. Hacienda y otros; Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR en la págs. 980-981.

reclamación de acuerdo con el derecho sustantivo aplicable.[42] Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes.[43]

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia.[44] Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. [45]

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria.[46] Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, así como de su jurisprudencia interpretativa.[47] A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando

---

[42] *Oriental Bank v. Caballero García*, en la pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[43] *Íd.*
[44] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR en las págs. 118-119.
[45] *Roldán Flores v. M. Cuebas et al.*, 199 DPR en la pág. 679.
[46] *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Serrano Picón v. Multinational Life Insurance Company*, 212 DPR en la pág. 993; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR en la pág. 611; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).
[47] *González Meléndez v. Mun. San Juan et al*, 212 DPR en la pág. 618.

todas las inferencias permisibles a su favor.[48] De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.[49]

**C.**

La corporación es una entidad que surge cuando dos o más personas obtienen autorización del estado para operar una empresa a la que se le reconoce una personalidad jurídica distinta y separada a la de sus dueños.[50] Sus características principales son: 1) personalidad jurídica propia; 2) responsabilidad limitada; 3) gerencia centralizada; 4) existencia perpetua, y la 5) libre transferibilidad de intereses.[51] Las corporaciones domésticas o foráneas, con o sin fines de lucro, o con fin social, solo pueden dedicarse a los propósitos que se establezca en su certificado de incorporación.[52] La corporación puede dedicarse a cualquier propósito lícito, a través de la declaración de propósito hecha en el certificado de incorporación, todo acto y negocio lícito será incluido como parte de los propósitos, excepto por las limitaciones específicas que se establezcan, si alguna.[53] Para que una corporación pueda inscribirse con un propósito principal de prestación de servicios profesionales, la misma debe estar inscrita bajo las disposiciones de las corporaciones profesionales de la Ley de Corporaciones, *supra.*[54]

Las corporaciones profesionales solo pueden organizarse para practicar una profesión cuyo ejercicio exija una licencia como requisito de ley y no pueden desempeñarse en otro negocio que no

---

[48] *Meléndez González et al. v. M. Cuebas*, 193 DPR en la pág. 118.
[49] *González Meléndez v. Mun. San Juan et al,* 212 DPR en la pág. 611.
[50] Carlos Díaz Olivo, *Corporaciones: Tratado Sobre Derecho Corporativo* 45 (2da ed. 2022).
[51] *Íd.*
[52] 14 LPRA sec. 3502.
[53] *Íd.*
[54] *Íd* sec. 3922.

sea la prestación de los servicios profesionales para los cuales se incorporó.[55] Tienen que ser creadas por uno o más individuos licenciados para ejercer la profesión para la cual se organizó y solo personas licenciadas pueden ser sus accionistas.[56] Al igual que a una corporación regular, a la corporación profesional se le reconoce una personalidad distinta a la de sus accionistas. Sin embargo, la corporación profesional tiene la particularidad de que su responsabilidad no se limita al monto de su inversión en la corporación si se trata de reclamaciones relacionadas a la actividad profesional regulada.[57] Cualquier oficial, empleado, agente o accionista de una corporación será responsable plena y personalmente por cualquiera acto negligente o de misión, actos ilícitos, o cualquier otra conducta torticera cometida por él, o por cualquier persona bajo su supervisión y control directo, derivado del desempeño de un servicio profesional en nombre de la corporación a la persona que le ofrecieron tales servicios profesionales.[58] Del mismo modo, si cualquier oficial, empleado, agente o accionista de la corporación adviene legalmente inhábil para rendir servicios profesionales, este debe separarse de forma inmediata de todo empleo con, y de cualquier interés pecuniario en la corporación.[59]

La Ley del Ejercicio de la Medicina Veterinaria en Puerto Rico, Ley Núm. 194-179[60] establece que solamente podrán ejercer la medicina veterinaria en Puerto Rico, los médicos veterinarios debidamente licenciados por la Junta Examinadora de Médicos Veterinarios de Puerto Rico.[61] De otra parte, la Ley General de Corporaciones, Ley Núm. 164-2009,[62] reconoce que los

---

[55] *Íd*, sec. 3927.
[56] *Íd*, sec. 3921-3922.
[57] *Íd*, sec. 3926.
[58] *Íd.*
[59] *Íd*, sec. 3929.
[60] *Íd*, sec. 2951.
[61] *Íd*, secs. 3922-3923.
[62] *Íd*, sec. 1501 *et seq.*

profesionales licenciados para brindar servicios de veterinaria podrán incorporarse y convertirse en accionistas de una corporación profesional para fines de lucro, con el propósito único y específico de rendir los mismos servicios profesionales.[63]

**III.**

A través de los seis errores esbozados, la parte peticionaria planteó que el foro *a quo* incidió al no declarar Ha Lugar las dos mociones de sentencia sumaria parcial presentadas por este. No le asiste la razón.

El propósito principal del mecanismo de sentencia sumaria es promover una solución justa, rápida y económica de los pleitos que no presentan controversias sustanciales o meritorias sobre hechos esenciales, por lo que resulta innecesaria la celebración de un juicio. No obstante, este mecanismo de agilización procesal no procede ante la existencia de controversia de hechos esenciales materiales. Tras efectuar un análisis exhaustivo de los documentos que obran en el expediente ante nos, concluimos acoger los hechos incontrovertidos y controvertidos, según fueron desglosados por el TPI en la *Resolución* recurrida.

Los documentos ante nuestra consideración reflejan que en el caso de autos existe controversia sobre: 1) los servicios que ha brindado Riscal Inc.; 2) la labor administrativa hecha por Riscal Inc. sobre Dorado Veterinary Hospital & Hotel, si alguna; 3) si la administración de Riscal Inc., se ha llevado a cabo conforme a la ley; 4) si la administración de Riscal Inc., se ha llevado a cabo conforme a los acuerdos estipulados en la Sentencia de Divorcio entre las partes; 5) a quién le corresponde la titularidad de Riscal, Inc.; 6) si la Sra. Viscal Rodríguez ha cobrado dividendos implícitos de Riscal Inc.; y 7) si la Sra. Viscal Rodríguez debe responderle al Sr. Rivera

---

[63] *Íd*, sec. 3922-3923.

Guzmán en daños. Los referidos hechos en controversia versan puntualmente sobre la naturaleza de las operaciones de Riscal Inc., y su relación con Dorado Veterinary Hospital & Hotel. El Tribunal de Primera Instancia esbozó como hecho incontrovertido número diez (10) que, en los propósitos y objetivos del certificado de incorporación de Riscal, Inc., no se incluyó la gestión de rendir servicios de medicina veterinaria. Por lo tanto, según el derecho corporativo esbozado previamente, se establece con claridad que Riscal Inc., no es una corporación profesional veterinaria. Partiendo de esta premisa, el TPI tiene la labor de dilucidar la extensión de la relación comercial, si alguna, entre Riscal Inc., y Dorado Veterinary Hospital & Hotel.

A su vez, juzgamos que, a través de la presentación del presente recurso, el Sr. Rivera Guzmán intenta obtener la reconsideración de un asunto que fue resuelto por un panel hermano de este Tribunal de Apelaciones en el caso núm. KLCE202400239. A través del referido dictamen, se estableció que le correspondía al Tribunal de Primera Instancia de Bayamón determinar la titularidad y valoración de las operaciones del Dorado Veterinary Hospital & Hotel. Sobre esto último, se determinó que quedaría en manos del foro primario la adjudicación sobre el cúmulo de acciones adquiridas por los cónyuges y la identificación del origen de los fondos utilizados para adquirir las mismas.

Es por todo lo antes expuesto que concurrimos con la determinación del Tribunal de Primera Instancia que estableció que las controversias del presente caso debían ser dirimidas a través de un proceso plenario. Es durante este proceso que las partes deben suministrarle al tribunal la evidencia correspondiente para sustentar sus alegaciones. En atención a la existencia de las referidas controversias, colegimos que el foro recurrido se encontraba impedido de adjudicar las controversias planteadas

sumariamente y, por lo tanto, corresponde atender el caso en sus méritos a través de un proceso judicial completo que pueda otorgarle a las partes un remedio justo y conforme a derecho.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se deja sin efecto la paralización de los procedimientos, se expide el presente recurso de *certiorari* y se confirma la *Resolución* emitida por el Tribunal de Primera Instancia.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones